IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JOSEPH R. MITCHELL, JR.                                                              PLAINTIFF

V.                                         CIVIL NO. 1:12-cv-01051

CORPORAL WILLIAM L. JAMES; and
DETECTIVE BRIAN P. GROSS                                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Joseph Mitchell filed this civil rights case pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Plaintiff has not requested a jury trial in this matter. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court are Separate Defendant Brian Gross's Motion for Summary Judgment (ECF No. 22), and Separate Defendant William James's Motion for Summary Judgment (ECF No. 33). Plaintiff filed a Response to each Motion. ECF Nos. 39 & 43. After considering all of the briefing the undersigned issues the following Report and Recommendation addressing both Motions.

**I.      BACKGROUND**

Plaintiff originally filed his Complaint on May 16, 2012. ECF No. 1. Plaintiff subsequently filed an Amended Complaint to add a request for punitive damages and the Court

ordered it be filed as a Supplement to Plaintiff's Complaint. ECF No. 9.[1] In his Complaint, Plaintiff alleges Separate Defendants violated his constitutional rights by exerting excessive force against him during his arrest. Plaintiff makes both official and individual capacity claims against both Separate Defendants. Specifically, Plaintiff alleges Separate Defendants opened fire on him on May 27, 2010 while Plaintiff was fleeing from law enforcement in his truck. Plaintiff was shot in the face. Plaintiff claims Separate Defendants were shooting to kill him when they fired into his truck cab as Plaintiff approached a roadblock. ECF No. 1, p. 5. Plaintiff requests damages for the loss of his eyesight caused by being shot and also for mental anguish.

Gross filed his Motion for Summary Judgment on August 2, 2013. ECF No. 22. Plaintiff responded, with the assistance of a Court prepared questionnaire. ECF No. 39. James filed his Motion for Summary Judgment on November 15, 3013. ECF No. 33. Plaintiff also responded to James's Motion with the assistance of a Court prepared questionnaire. ECF No. 43.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins.*

---

[1] Plaintiff also filed a third version of his Complaint on October 17, 2012. ECF No. 15. Plaintiff did not title this document but it was filed by the Clerk of the Court as a Supplement to his Complaint. After reviewing the document, the Court determines it is an Amended Complaint, and Plaintiff did not seek leave to file such Amended Complaint. Therefore, the Court will not consider the document as an Amended Complaint. The Court notes that Plaintiff did not seek to add any additional claims in this document so this decision has little to no impact on Plaintiff's case.

*Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.     DISCUSSION

Plaintiff's only claim against Separate Defendants is that they used excessive force when they shot him while he was fleeing from police. Plaintiff makes this claim against Separate Defendants in both their official and individual capacities. While Separate Defendants filed separate Motions for Summary Judgment, the issues can be analyzed in this single Report and Recommendation as the facts alleged against both Separate Defendants are the same.

####     A.     Official Capacity Claim

Gross, an employee of Union County, argues that Plaintiff's Complaint is devoid of any alleged custom or policy of Union County that resulted in a violation of his constitutional rights. James, an employee of the State of Arkansas, argues sovereign immunity bars Plaintiff's official capacity claims against him because he is employed by the state and an official capacity claim against James is essentially a claim against the State.

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained in *Gorman*:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). An official capacity claim against Separate Defendants is essentially a claim against Union County and the State of Arkansas. When asked by the Court how a custom, policy or procedure of Union County or the State violated his constitutional rights Plaintiff argued that Separate Defendants shooting into the cab of his truck violated the policies and procedures of both Union County and the State. Further, Plaintiff argued that Separate Defendants' actions were negligent, a tort of outrage, and misconduct. Lastly, Plaintiff argued an officer cannot be immunized for unreasonable use of deadly force. ECF No. 39, p. 12; ECF No. 43, p. 15.

"[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997). There are no facts or allegations

4

in Plaintiff's Complaint or his responses to support an official capacity claim against Separate Defendants. Plaintiff did not present any facts showing a policy or custom of Union County or the State caused Separate Defendants use of force. Further, Plaintiff himself states in his explanation of his official capacity claim that Separate Defendants use of force was a violation of County and State policy and procedure. ECF No. 39, p. 12; ECF No. 43, p. 15. Thus, their actions could not have been the result of any policy or procedure of the County or the State.

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, Union County cannot be held liable based merely on the fact it employs Gross. Likewise, the State cannot be liable merely because it employs James. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fail as a matter of law.

Finally, because the Court finds that Plaintiff has failed to allege any official capacity claims it need not reach the issue of whether sovereign immunity bars such claims against James.

B.   Individual Capacity Claim

Plaintiff also claims Separate Defendants violated his constitutional rights in their individual capacity by using excessive force against him. Gross argues he acted reasonably in light of the circumstances and therefore his use of force does not constitute excessive force in violation of Plaintiff's constitutional rights. James argues he has qualified immunity from Plaintiff's claims.

i.   Applicable Law

A claim that an officer used excessive force against a citizen in the course of an "arrest, investigatory stop, or other seizure" is properly analyzed under the "objective reasonableness

standard" of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 397 (1989) (internal quotations omitted). The relevant inquiry being whether the official's actions are "objectively reasonable in light of the facts and circumstances confronting [him]." *Id.* The reasonableness of the use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. Carroll,* 658 F.3d 819, 826 (8th Cir. 2011) (quoting *Graham,* 490 U.S. at 396). In considering whether the officer acted reasonably, the officers underlying intent and motivation is irrelevant. *Graham v. Connor,* 490 U.S. 386, 397 (1989). Further, an officer's evil intentions do not render an objectively reasonable use of force a violation of the Fourth Amendment. *Id.* In determining the reasonableness of a particular use of force, the Court should consider the particular circumstances of each case, including (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officer or others;" and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Shannon v. Koehler,* 616 F.3d 855, 862 (8th Cir. 2010).

Further, in the case of deadly force, the Court must consider the "standard provided in *Tennessee v. Garner*: A seizure-by-shooting is objectively reasonable when 'the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Garnder v. Buerger*, 82 F.3d 248, 252 (8th Cir. 1996) (quoting *Tennessee v. Garner,* 471 U.S. 1, 3 (1985)). Additionally, case law has demonstrated that there are certain circumstances that necessitate the use of deadly force while attempting to detain fleeing suspects. *See, e.g., Scott v. Harris*, 550 U.S. 372, 380 (2007) (an officers use of deadly force by using his patrol car to force a fleeing suspect's car off the road was deemed reasonable because of the substantial and immediate risk of serious physical injury posed to others by the

suspects actions); *Hernandez v. Jarmen*, 340 F.3d 617 (8th Cir. 2003) (holding an officer was entitled to qualified immunity for fatally shooting a fleeing suspect after the suspect led officers on a high speed chase with speeds reaching 100 miles per hour and ramming his car into a police cruiser); *Cole v. Bone*, 993 F.3d 1328, 1333 (8th Cir. 1993) (holding an officer was entitled to qualified immunity for fatally shooting the driver of an eighteen wheel truck and trailer that was fleeing on the congested interstate through Kansas City at speeds exceeding 90 miles per hour, forcing civilian drivers on to the shoulders of the interstate, and refusing to stop after multiple attempts by the officers using rolling and stationary road blocks). When, however, "the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force." *Moore v. Indehar,* 514 F.3d 756, 762 (8th Cir. 2008) (internal quotations omitted); *see also Tennessee v. Garner,* 471 U.S. 1 (1985) (holding the killing of an unarmed burglar to prevent his escape was an unconstitutional seizure).

  ii. <u>The Record</u>

Here it is undisputed that on May 21, 2010, Plaintiff was an inmate at the Garland County Detention Center ("GCDC") in Hot Springs, Arkansas. ECF No. 23-2. Plaintiff was incarcerated at the GCDC for charges of breaking and entering, theft of property under $500.00, obstructing governmental operations, shop lifting, and failure to pay child support. ECF No. 23-2. On this same day Plaintiff was transported to St. Joseph's Mercy Health Center in Hot Springs for medical treatment. ECF No. 23-2. On May 24, 2010, Plaintiff walked out of the hospital and the Garland County Sheriff's Department obtained a Second Degree Escape Warrant of Arrest for Plaintiff. ECF No. 23-2.

On May 27, 2010, Plaintiff engaged the officers of Ashley and Union County and Arkansas

State Troopers in a high speed chase westbound on Highway 82 from Ashley County to Union County. ECF No. 23-2. During the chase Plaintiff reached speeds of at least 80 to 85 miles per hour and there were other vehicles on the road during the chase. ECF No. 43, p. 9. The officers placed a spike strip across the westbound side of the highway to deflate Plaintiff's tires. ECF No. 23-2. Separate Defendants were positioned across the road from the spike strip and fired their weapons as Plaintiff approached the spike strip. ECF No. 23-2. At least two of Separate Defendants' bullets entered Plaintiff's truck cab—one hitting Plaintiff in the face and the other hitting Plaintiff's passenger in the head. ECF No. 23-2; ECF No. 43, p.13.

After the shots were fired and Plaintiff ran over the spike strip, Plaintiff continued to travel at a speed of forty-five (45) miles per hour with three deflated tires. ECF No. 23-2. Plaintiff was stopped when a Sheriff's deputy (a non-party) pulled in front of Plaintiff's truck and stopped causing Plaintiff's truck to collide with the Sheriff's cruiser. ECF No. 23-2. Plaintiff was apprehended at this time.

As a result of the high speed chase, Plaintiff pled guilty to felony fleeing.[2] ECF No. 43, p. 13. Further, the passenger in Plaintiff's truck died of a gun shot wound to the head. ECF No. 23-2. Additionally, Robin Carroll, Prosecuting Attorney for the Thirteenth Judicial District, concluded both Separate Defendants were justified in discharging their weapons. ECF No. 23-5.

Gross alleges he shot once at Plaintiff's truck tire and at the time he decided to shoot he believed Plaintiff was a danger to anyone on the roadway. ECF No. 23-3. James alleges he shot

---

[2] Felony Fleeing is defined by the Arkansas Code as a class D felony defined as purposely operating a vehicle in such a manner that created a substantial danger of death or serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code. Ann. § 5-54-125(d)(2).

once at Plaintiff's truck tire and at the time he decided to shoot he believed Plaintiff was traveling at 90 plus miles per hour, Plaintiff had almost hit another vehicle head on prior to reaching the spike strip, and Plaintiff attempted to avoid the spike strip. Further, James alleges he believed Plaintiff would injure civilians and other officers if he made it past the spike strips. This belief was based on James's knowledge that another state trooper had civilian traffic stopped west of the spike strips. James also believed Plaintiff would cause a pile up if he reached this traffic. ECF No. 23-4. Separate Defendants both assert they were informed, prior to the chase beginning, that Plaintiff had previously stated he would not be taken back to jail alive. ECF Nos. 23-3, 23-4.

     Plaintiff disputes whether Separate Defendants were firing at his truck tires or into the cab of the truck and he also disputes how many shots were fired. Plaintiff asserts Separate Defendants were shooting to kill him and that they both shot into his truck cab twice. ECF No. 43, p. 10-11. Further, Plaintiff alleges he did not attempt to avoid the spike strips, and instead, he slowed down—by applying his breaks as he approached the roadblock—in order to show the officers he intended to stop. ECF No. 43, p. 10-12. Additionally, Plaintiff disputes that he stated he would not be taken back to jail alive and disputes any person made this statement to police officers. ECF No. 43, p.10.

     Finally, the record contains a video recording taken from the dashboard camera of an Arkansas State Trooper driving behind the lead officer during the chase.[3] ECF No. 34. The video shows Plaintiff fleeing on a two lane highway at what appears to be a high rate of speed. Plaintiff

---

[3] While Plaintiff did not initially challenge the validity of the dashboard video in his Responses (ECF No. ECF Nos. 39 & 43), Plaintiff has now challenged the accuracy of the video provided by the State of Arkansas by separate motions (ECF No. 44-46). The Court addresses this Motion by separate Order.

crosses the center line several times in order to pass civilian vehicles and also forces multiple civilian vehicles to the shoulder of the highway. The Court is unable to determine from the video whether Plaintiff narrowly missed a head on collision. Further, the Court is unable to determine from the video whether Plaintiff attempted to avoid the spike strip or whether Plaintiff applied his breaks as he approached the strip. Finally, the video has no useful footage of the actual shooting. The portion of the video depicting the chase is less than six minutes in length, and the Court notes the record is unclear as to whether the video depicts the entire length of the chase.

    iii.  <u>Gross</u>

  Gross alleges he did not violated Plaintiff's Fourth Amendment rights because his actions were objectively reasonable in light of the circumstances based on the following: (1) Plaintiff was fleeing from officers at a high rate of speed and driving recklessly; (2) Gross believed that if Plaintiff made it past the spike strip he would pose a threat to the other officers and the general public; and (3) Gross claims he was shooting at Plaintiff's tires and not shooting to kill Plaintiff. Further, Gross argues the threat Plaintiff posed to the general public was exacerbated by the fact a roadblock was set up west of the spike strip and drivers were likely making u-turns to avoid the roadblock, thus, placing themselves in Plaintiff's direct path. ECF No. 23, p.6.

  It is undisputed the Plaintiff was initially fleeing and actively attempting to evade arrest by leading the officers on a high speed chase on Highway 82—a predominantly two-lane highway. Further, the video footage shows that Plaintiff was driving recklessly by speeding, crossing the center line on multiple occasions in order to pass civilian vehicles, and forcing civilian drivers to the shoulder of the highway.

  There are, however, certain facts in dispute. It is disputed whether Plaintiff was still

actively fleeing and attempting to evade arrest when he was shot. Plaintiff alleges, under penalty of perjury, that he slowed his truck as he approached the spike strip by applying his breaks to show his intentions to stop. Plaintiff also alleges, under penalty of perjury, he did not attempt to avoid the spike strip. The video footage is inconclusive as to these facts. Plaintiff also disputes whether an informant told the officers that he stated he would not be taken back to jail alive, and whether Gross was shooting into the cab of his truck or at the tires.

The Court finds these disputed facts are material to the issue of whether Gross's actions violated Plaintiff's constitutional rights. *See Garnder v. Buerger*, 82 F.3d 248, 252 (8th Cir. 1996); *see also Rahn v. Hawkins,* 2003 WL 22014730, 73 Fed.Appx 898 (8th Cir. 2003) (using deadly force against a suspect who is attempting to surrender violates the Fourth Amendment) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12, (1985); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir.1993)). Accordingly, Gross's Motion should be denied regarding the individual claim against him.

   iv. <u>James</u>

Separate Defendant James alleges he is entitled to qualified immunity in response to Plaintiff's claim of excessive force. In addressing qualified immunity the Court must employ a two-step process. *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008). First, considering the facts in the light most favorable to Plaintiff, the Court must determine whether the officer's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). If the Court determines a constitutional violation has been established, "only then must [the Court] consider whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Id.* (internal quotations omitted).

Accordingly, the Court will first determine whether the facts alleged by Plaintiff show James's conduct violated Plaintiff's constitutional rights. As noted above, the Court must consider the facts in the light most favorable to Plaintiff. *McCoy v. City of Monticello,* 342 F.3d 842, 846 (8th Cir. 2003). Plaintiff admits he was initially fleeing and actively attempting to evade arrest by leading the officers on a high speed chase on Highway 82—a predominantly two-lane highway. Further, the video footage shows that Plaintiff was driving recklessly by speeding, crossing the center line on multiple occasions in order to pass civilian vehicles, and forcing civilian drivers to the shoulder of the highway. However, Plaintiff alleges, under penalty of perjury, he slowed his truck as he approached the spike strip by applying his breaks to indicate to officers he was going to stop. Plaintiff also alleges he did not attempt to avoid or swerve around the spike strips. Also, Plaintiff alleges James fired prior to Plaintiff reaching the spike strips. Additionally, Plaintiff alleges James was shooting to kill him when he shot into the cab of his truck rather than at the tires. Finally, Plaintiff alleges he never stated he would not be taken back to jail alive and no person relayed such a statement to the officers. As noted above, the video footage from the chase is inconclusive as to any of these facts alleged by Plaintiff.

If Plaintiff was in fact attempting to stop at the roadblock by applying his breaks and he made no attempt to avoid the spike strip, *and* a reasonable officer at the scene should have been aware of this attempt, then James's actions were objectively unreasonable. *See Rahn v. Hawkins,* 2003 WL 22014730, 73 Fed.Appx 898 (8th Cir. 2003) (holding an officers actions of shooting a suspect what was attempting to surrender was objectively unreasonable thus violating the Fourth Amendment) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12, (1985); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir.1993)). Therefore, considering the facts as alleged by Plaintiff at this juncture, the

Court finds James conduct violated Plaintiff's Fourth Amendment right to be free from excessive force.

Having found Plaintiff's allegations, if true, establish a constitutional violation, the Court must now consider "whether the right [to be free from excessive deadly force] was clearly established . . . in light of the specific context of the case.'" *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier*, 533 U.S. at 201). In addressing this prong of the qualified immunity analysis, the Court must not only consider the prior case law but also consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *McCoy*, 342 F.3d at 844; *see also Brockington v. City of Sherwood,* 503 F.3d 667, 672 (8th Cir. 2007) ( a genuine issue of material fact as to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted will defeat summary judgment based on qualified immunity).

Under this second step, the Court must first determine whether the right was clearly established. *McCoy*, 342 F.3d at 844. Based on the case law in May 2010, at the time of the shooting, the Court finds the constitutional right to be free from excessive deadly force when a suspect is attempting to surrender or no longer poses an immediate threat of physical harm or injury was clearly established. *See e.g., Rahn v. Hawkins,* 2003 WL 22014730, 73 Fed.Appx 898 (8th Cir. 2003) (denying an officer qualified immunity for shooting a bank robbery suspect after the suspect threw down his bag and held up his hands) (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12, (1985) and *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir.1993)). *See also Craighead v. Lee*, 399 F.3d 954, 962-63 (8th Cir. 2005); *Ribbey v. Cox,* 222 F.3d 1040 (8th Cir.2000) (denying qualified immunity because genuine issues of material fact exists regarding whether the officers'

13

actions in shooting a passenger who he believed was potentially reaching for a weapon were objectively unreasonable); *McCaslin v. Wilkins,* 183 F.3d 775 (8th Cir.1999) (denying qualified immunity because genuine issues of material fact exists regarding whether the officers' actions of shooting a suspect who led officers on a high speed chase after the suspect ran off the road were objectively unreasonable); *Woolfolk v. Smith,* 81 F.3d 741 (8th Cir.1996) (Eighth Circuit had no jurisdiction over an interlocutory-qualified immunity appeal because the district court denied summary judgment based on its findings that genuine issue of material fact exists as to the excessive force claim); *Ludwig v. Anderson,* 54 F.3d 465 (8th Cir.1995) (denying qualified immunity because genuine issues of material fact exists regarding whether the officers' actions in shooting a non-suspect was objectively unreasonable).

Next, the Court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronting James. *See Brockington v. City of Sherwood,* 503 F.3d 667, 672 (8th Cir. 2007). This standard does not require that prior case law address the exact facts faced by an officer in order to provide notice to the officer. *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005) (internal quotations omitted). Instead, an officer may still be on notice his conducts violates established law even in novel factual circumstances. *Id.* "Although earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* However, "an officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions." *McCoy* , 342 F.3d at 844. Therefore, the issue is whether prior case law would have put a reasonable officer on notice that use of deadly force in the circumstances presented here would

14

violate Plaintiff's constitutional rights.

Here, Plaintiff does not dispute that he initially engaged officers in a high speed chase, but he alleges, under penalty of perjury, he attempted to stop at the roadblock by applying his breaks and he made no attempt to avoid the spike strip at the road block. Plaintiff further alleges he did not narrowly miss a head on collision and no one made a statement to officers that Plaintiff said he would not be taken back to jail alive. Contrary to Plaintiff's allegations, James asserts: (1) Plaintiff attempted to avoid the spike strips as he approached the road block; (2) the officers in pursuit of Plaintiff reported over the radio that Plaintiff was traveling at speeds over 90 miles per hour and that he almost hit another motorist head on; and (3) officers at the scene were informed that Plaintiff stated he would not be taken back to jail alive. Lastly, Plaintiff did not dispute the fact that another state trooper was a short distance west of the spike strip stopping eastbound traffic.

Given the disputed facts surrounding the circumstances facing James at the time of the shooting, the Court finds there are genuine issues of material fact as to whether a reasonable officer at the scene would have believed shooting Plaintiff to be a illegal action violating Plaintiff's constitutional rights. *McCoy* , 342 F.3d at 844; *Brockington v. City of Sherwood,* 503 F.3d 667, 672 (8th Cir. 2007).

Accordingly, James should not be granted qualified immunity and his Motion for Summary Judgment should be denied as to the individual capacity claim of excessive force against him.

## IV.    CONCLUSION

Accordingly, I recommend Separate Defendant Gross's Motion for Summary Judgment (ECF No. 22) be **GRANTED** in part and **DENIED** in part. Specifically, all official capacity claims

against Gross should be dismissed while the individual capacity claim against Gross for excessive force shall remain. Further, I recommend Separate Defendant James's Motion for Summary Judgment (ECF No. 33) be **GRANTED** in part and **DENIED** in part. Specifically, all official capacity claims against James should be dismissed while the individual capacity claim against James for excessive force shall remain.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 5th **day of March 2014.**

                                                    /s/ Barry A. Bryant  
                                                  HON. BARRY A. BRYANT  
                                                  UNITED STATES MAGISTRATE JUDGE